# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDEN VANATTI,<br><br>        Plaintiff,<br><br>    v.<br><br>J. GATES, et al.,<br><br>        Defendants. | Case No. 1:24-cv-0488 BAM (PC)<br><br>ORDER FINDING PLAINTIFF MAY PROCEED ON COGNIZABLE CLAIM<br><br>(ECF No. 10) |

Plaintiff Lynden Vanatti ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and Plaintiff was granted leave to amend. Plaintiff's first amended complaint is currently before the Court for screening. (ECF No. 10.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the

1  pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not
2  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
3  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*
4  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as
5  true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,
6  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

7  To survive screening, Plaintiff's claims must be facially plausible, which requires
8  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable
9  for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*
10  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully
11  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility
12  standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

13  **II.     Plaintiff's Allegations**

14  Plaintiff is currently housed at the California Correctional Institution ("CCI") in
15  Tehachapi, California where the events in the complaint are alleged to have occurred.  Plaintiff
16  names as defendants: (1) J. Gates, correctional officer, (2) O. Pavon correctional officer, (3) J.
17  Ebaniz, correctional officer, (4) O. Delgado, correctional officer, and (5) C. Chamberlain,
18  correctional officer.

19  In claim 1, Plaintiff alleges a violation of the Eighth Amendment.  On September 8, 2022,
20  Plaintiff was using the outside recreation time at CCI A-yard, exercising by himself.  A riot
21  erupted between approximately 90 white and Hispanic inmates of different gang factions.  The
22  riot was quickly encompassing and moving across the yard and the configuration of the yard.
23  Plaintiff was forced to maneuver ahead of the melee to avoid being engulfed in the fighting.

24  No weapons were observed being used by any of the participants and were reported to be
25  "merely combatting with hand to hand (feet and fists)." The only significant injuries sustained
26  that requires immediate and emergency treatment were due to the excessive and potential lethal
27  use of force from officers using their 40mm block guns.

28  During the riot, correctional officer J. Gates, O. Pavon, J. Ebaniz, C. Chamberlain, and O.

1  Delgado fired no less than 16 rounds from their state issued 40mm block guns and according to
2  their official reports, 15 shots missed their targets and were unascertained where they landed
3  (referring to Exhibit #1).  One of the "stray" rounds struck Plaintiff in the temporal region of his
4  head, upon which he lost consciousness and awareness of himself and his surroundings and fell to
5  the ground. Plaintiff regained consciousness sometime later when the riot was controlled and
6  medical staff/officers made contact with Plaintiff (referring to Exhibit #2).

7      No reports identify Plaintiff as being an active participant in the riot.  Plaintiff is an
8  elderly man nearly 60 years old who is mobility impaired, ADA who uses a cane, a back brace
9  and wears a neon green disability vest (referring to Exhibit #4).  While escorting inmates in
10 restraints back to their housing, witnesses saw officer O. Delgado, C. Chamberlain, O. Pavon and
11 others high-fiving and laughing with each other making statements as "20$ a head shot" and
12 compared it as "like call of duty," a video game of shooting others.

13     As a result of being shot in the head with a 40mm direct impact rounds, Plaintiff has
14 experience severe, debilitating headaches nearly daily, amnesia, confusion, disorientation,
15 insomnia, fatigue, and vision and hearing loss.  Plaintiff had 6 staples to his head and diagnosed
16 with a concussion, loss of consciousness and vomiting.

17     The 15 of 16 shots fired were "misses," yet in training to qualify to use a 40mm block
18 gun, the officer must have a 66% accuracy rate. Accuracy for this riot was a mere 6%. "Coupled
19 with the statements made by defendants heard by witness, & the fact that no weapons were
20 observed being used by officers, and there was multiple hospitalizations for inmates being shot in
21 the head with 40mm block guns & no other significant injuries one can make a reasonable
22 inference that guards actions were sadistic and/or malicious" in the use of deadly force.  (ECF
23 No. 20 (corrected for spelling).)

24     As remedies, Plaintiff seeks compensatory damages and punitive damages.

25 **III.  Discussion**

26     **Eighth Amendment -Excessive Force**

27     The Eighth Amendment protects prisoners from inhumane methods of punishment and
28 from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McxcessiveMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

When prison officials stand accused of using excessive force, the core judicial inquiry is "... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. *See Whitley*, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. *See Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321-22.

Liberally construing the allegations in the first amended complaint, Plaintiff states a claim for excessive force in violation of the Eighth Amendment against J. Gates, O. Pavon, J. Ebaniz, C. Chamberlain, and O. Delgado.

**IV.  Conclusion and Order**

Based on the above, the Court finds that Plaintiff's first amended complaint states a cognizable claim against the Defendants for violation of the Eighth Amendment.

Accordingly, it is HEREBY ORDERED as follows:

1. This action proceed on Plaintiff's first amended complaint, filed on September 23, 2024, against correctional officer Defendants J. Gates, O. Pavon, J. Ebaniz, C. Chamberlain, and O. Delgado in violation of the Eighth Amendment, and
2. A separate order will issue regarding service of the complaint.

IT IS SO ORDERED.

Dated:   **October 3, 2024**          /s/ *Barbara A. McAuliffe*  
                                      UNITED STATES MAGISTRATE JUDGE